**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DISTRICT 29, UNITED MINE WORKERS
OF AMERICA; ROY BREEDING; THOMAS E.
DAVIS; CARL S. HEFFINGER; PAUL A.
HUNT; GLENN E. KITTS; ALBERT L.
MARTIN; RICHARD L. SHRADER;
ELHIEU C. TAYLOR; HAROLD WICKLINE;
JOHN DOE; MARY DOE; WILLIAM A.
ALLEN,
Plaintiffs-Appellees,

and

UNITED MINE WORKERS OF AMERICA
1974 BENEFIT PLAN AND TRUST,
Defendant-Appellee,

and                                                            No. 94-1444

UNITED MINE WORKERS OF AMERICA
COMBINED BENEFIT PLAN; UNITED MINE
WORKERS OF AMERICA 1992 PLAN
BENEFIT,
Defendants & Third Party
Plaintiffs-Appellees,

and

QUALITY LEASING, INCORPORATED;
KANAWHA TRANSPORT, INCORPORATED;
CAR-BEC TRUCKING COMPANY; CIRCLE
TRANSPORT, INCORPORATED,
Third Party Defendants-Appellees,

and

MICHAEL H. HOLLAND; MARTY D.
HUDSON; ROBERT C. WALLACE; THOMAS
CONNORS,
<u>Trustees-Appellees,</u>

and

DOUGLAS M. BOOTHE; BOBBY
DEMARCEY,
<u>Plaintiffs,</u>
v.

PATSY TRUCKING, INCORPORATED, a
corporation,
<u>Defendant-Appellant,</u>

and

CLOVIS D. COX,
<u>Third Party Defendant-Appellant.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, Senior District Judge.
(CA-92-1013-5)

Argued: March 6, 1997

Decided: April 9, 1997

Before HAMILTON and WILLIAMS, Circuit Judges, and
KISER, Chief United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

2

**COUNSEL**

**ARGUED:** Erin Elizabeth Magee, JACKSON & KELLY, Charleston, West Virginia, for Appellants. Marilyn Louise Baker, MOONEY, GREEN, BAKER, GIBSON & SAINDON, P.C., Washington, D.C., for Appellees. **ON BRIEF:** Daniel L. Stickler, JACKSON & KELLY, Charleston, West Virginia, for Appellants. John R. Mooney, MOONEY, GREEN, BAKER, GIBSON & SAINDON, P.C., Washington, D.C.; Peter Buscemi, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C.; David W. Allen, Office of the General Counsel, UMWA HEALTH AND RETIREMENT FUNDS, Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Patsy Trucking, Inc. (Patsy) appeals the district court's entry of judgment in favor of the United Mine Workers of America 1992 Benefit Plan and its trustees (collectively the 1992 Benefit Plan) following a bench trial to determine whether Patsy is liable to provide health benefits to certain eligible retirees under § 9711(a) of the Coal Industry Retiree Health Benefit Act (the Coal Act), 26 U.S.C.A. §§ 9701 to 9722 (West Supp. 1996). Because the district court applied the wrong standard to determine whether Patsy is liable to provide such benefits under the Coal Act, we vacate the district court's judgment and remand the case for further proceedings consistent with this opinion.

I.

Prior to September 1, 1989, Patsy provided trucking services to the coal industry. In 1988, Patsy became a signatory to a collective bar-

gaining agreement with the United Mine Workers of America (the UMWA), which, by its terms, expired on February 1, 1993. The agreement, known as the 1988 National Bituminous Coal Wage Agreement (the 1988 Agreement), required Patsy to provide health benefits to certain eligible retirees by maintaining an individual employer health benefits plan. The 1988 Agreement provided that Patsy would continue providing these health benefits until February 1, 1993, or until Patsy was determined to be "no longer in business." (J.A. 444). The 1988 Agreement also provided that the 1974 UMWA Benefit Plan and Trust (the 1974 Plan), a multiemployer health benefits plan,[1] would step in to provide the health benefits if Patsy was determined to be "no longer in business."

Under the 1988 Agreement, a signatory employer is considered no longer in business if: (1) the employer has ceased all mining operations and has ceased employing persons under the agreement, with no reasonable expectation that such operations would start up again; and (2) the employer is financially unable to provide health and other non-pension benefits to its retired miners and surviving spouses.

By September 1989, Patsy had ceased all trucking operations. Patsy, however, provided health benefits to eligible retirees pursuant to the 1988 Agreement until June 30, 1992. At that time, Patsy advised its eligible retirees that it was financially unable to continue providing them with health benefits.[2]

In October 1992, Congress passed the Coal Act in an effort: (1) to remedy problems that had arisen with the provision and funding of

_____

[1] "Multiemployer plans are characteristically maintained to fulfill the terms of collective-bargaining agreements. A group of employers makes contributions to a multiemployer plan. The plan pools those funds into a general fund available to pay any benefit obligation of the plan." Carbon Fuel Co. v. USX Corp., 100 F.3d 1124, 1127 (4th Cir. 1996).

[2] When Patsy ceased all trucking operations, it had $638,824.58 in assets. In December 1991, at the direction of Patsy's president and sole shareholder, Clovis Cox (Cox), Patsy forgave $271,009.81 of a loan that Patsy had made in favor of Cox. Then, in January 1992, Patsy, again through Cox, forgave Cox's remaining debt to Patsy of $352,903. This last forgiveness left Patsy with $512.98 in assets.

4

health benefits to UMWA retirees under the existing multiemployer health benefits plans; and (2) to provide for the continuation of the individual health benefits plans already in place under collective bargaining agreements. See Energy Policy Act, Pub. L. No. 102-486, 1992 U.S.C.C.A.N. (106 Stat. 3037) 1943. To effectuate this second purpose, § 9711(a) of the Coal Act provides, in pertinent part:

> The last signatory operator of any individual who, as of February 1, 1993, is receiving retiree health benefits from an individual employer plan maintained pursuant to a 1978 or subsequent coal wage agreement shall continue to provide health benefits coverage to such individual and the individual's eligible beneficiaries which is substantially the same as (and subject to all the limitations of) the coverage provided by such plan as of January 1, 1992. Such coverage shall continue to be provided for as long as the last signatory operator (and any related person) remains in business.

26 U.S.C.A. § 9711(a) (emphasis added). Under this section, an eligible retiree is entitled to receive health benefits following expiration of the relevant coal wage agreement from the "signatory operator which was the most recent coal industry employer of such retiree." 26 U.S.C.A. § 9701(c)(4). The term "signatory operator" means a coal industry operator that is or was a signatory to a coal wage agreement, such as the 1988 Agreement involved here.

To effectuate its first purpose, the Coal Act established a new multiemployer health benefits plan named the Combined Fund. See 26 U.S.C.A. § 9702(a). The Combined Fund is so named because it resulted from combining the 1974 Plan with another multiemployer health benefits plan, the UMWA 1950 Benefit Plan and Trust (the 1950 Plan). Id. The Coal Act limited enrollment of the Combined Fund to individuals receiving benefits under the 1974 Plan or the 1950 Plan as of July 20, 1992. 26 U.S.C.A. § 9703(e). Additionally, the Coal Act created an entirely new multiemployer health benefits plan, the 1992 Benefit Plan, which steps in to provide an eligible retiree the health benefits that such retiree would receive under § 9711(a) of the Coal Act but does not because the last signatory operator does not remain in business. 26 U.S.C.A.§ 9712(b)(2)(B).

5

Subsequent to the enactment of the Coal Act, District 29 of the UMWA and certain individual beneficiaries (collectively the plaintiffs) filed suit against Patsy. The suit sought to hold Patsy liable for health benefits under the 1988 Agreement and under § 9711(a) of the Coal Act. In the event Patsy escaped liability under the 1988 Agreement, the suit sought the same benefits from the Combined Fund. Furthermore, in the event Patsy escaped liability under § 9711(a) of the Coal Act, the suit sought such benefits from the 1992 Benefit Plan.

On April 7, 1993, the district court entered a preliminary injunction on motion of the plaintiffs requiring Patsy to provide eligible retirees retroactive health care benefits from July 1, 1992 until February 1, 1993. The injunction also required both the Combined Fund and the 1992 Benefit Plan to provide, as agreed between them, the same benefits from February 2, 1993 forward.

Patsy cross-claimed against both the Combined Fund and the 1992 Benefit Plan to establish their respective liabilities under the 1988 Agreement and the Coal Act. Likewise, both the Combined Fund and the 1992 Benefit Plan cross-claimed against Patsy. The Combined Fund sought to establish Patsy's liability under the 1988 Agreement to provide eligible retirees with health benefits for the period of July 1, 1992 through February 1, 1993. The 1992 Benefit Plan sought to establish Patsy's liability to provide health benefits to eligible retirees after February 1, 1993 under § 9711(a) of the Coal Act and to recover the money that it (the 1992 Benefit Plan) had to expend to provide eligible retirees health benefits per the injunction. Furthermore, the Combined Fund filed a third-party complaint against Cox, alleging that Cox had unlawfully distributed assets belonging to Patsy to himself that should be used to provide the disputed health benefits.

Both the Combined Fund and the 1992 Benefit Plan moved for summary judgment on their respective claims against Patsy. The Combined Fund also moved for summary judgment on its claim against Cox. In response to these motions, Patsy and Cox conceded that Patsy was financially able to provide health benefits to eligible retirees for the period of July 1, 1992 through February 1, 1993. The district court entered summary judgment in favor of the Combined Fund on its fraudulent transfer claim against Cox, establishing that Patsy had well over $600,000 in assets. The district court also entered

6

summary judgment in favor of the Combined Fund and the 1992 Benefit Plan on their respective claims against Patsy, effectively disposing of the plaintiffs' claims by holding Patsy liable for health benefits to eligible retirees under the 1988 Plan and the Coal Act.

Subsequently, the district court vacated the portion of its order granting summary judgment in favor of the 1992 Benefit Plan on its claim against Patsy under the Coal Act and conducted a bench trial on this claim. At trial, Patsy argued that under the definition of "in business," as provided in the general definitional section of the Coal Act, <u>see</u> 26 U.S.C.A. § 9701(c)(7), it did not "remain in business" for purposes of liability under § 9711(a) of the Coal Act. The Coal Act defines the term "in business" for purposes of the entire statutory chapter as one who "conducts or derives revenue from any business activity, whether or not in the coal industry." 26 U.S.C.A. § 9701(c)(7).

For reasons that are not clear in the record, the district court refused to apply this definition to determine whether Patsy "remained in business" for purposes of the Coal Act. Instead, the district court applied the definition of the phrase "no longer in business" as contained in the 1988 Agreement. Thus, the district court considered: (1) whether, by February 1, 1993, Patsy had ceased all mining operations and had ceased employing persons under the agreement, with no reasonable expectation that such operations would start up again; and (2) whether Patsy was financially unable to provide health and other non-pension benefits to its retirees and surviving spouses. Based on its findings that Patsy had ceased all mining operations, but was financially able to provide health and other non-pension benefits to its retirees and surviving spouses, the district court concluded that Patsy "remained in business" for purposes of liability under § 9711(a) of the Coal Act. Accordingly, the district court entered judgment in favor of the 1992 Benefit Plan. Patsy noted a timely appeal of this judgment.

II.

Patsy contends the district court erroneously concluded that it is liable to provide health benefits to eligible retirees under § 9711(a) of the Coal Act. Patsy contends the district court reached this erroneous conclusion by impermissibly applying the definition of "no longer in

7

business" contained in the 1988 Agreement to determine whether it "remained in business" for purposes of § 9711(a) of the Coal Act. Patsy continues to maintain that the district court should have applied the definition of the term "in business" provided in the general definitional section of the Coal Act, see 26 U.S.C.A. § 9701(c)(7). According to Patsy, applying the statutory definition requires that judgment be entered in its favor.

After reviewing this alleged error of law de novo, as we must, see Resolution Trust Corp. v. Maplewood Inv., 31 F.3d 1276, 1281 n.7 (4th Cir. 1994), we conclude that the district court did apply an incorrect definition of "remains in business" as that phrase is found in § 9711(a) of the Coal Act and that such error is not harmless. Under § 9711(a) of the Coal Act, the "last signatory operator" to a coal wage agreement that was in effect on February 1, 1993, must provide health benefits to eligible retirees beyond expiration of the relevant coal wage agreement. See 26 U.S.C.A. § 9711(a). The last signatory operator remains so obligated for "as long as[it] (and any related person) remains in business." 26 U.S.C.A. § 9711(a) (emphasis added). The Coal Act itself defines the term "in business" for purposes of the entire statutory chapter. See 26 U.S.C.A.§ 9701(c)(7) ("For purposes of this chapter, a person shall be considered to be in business if such person conducts or derives revenue from any business activity, whether or not in the coal industry."); Carbon Fuel v. USX Corp., 100 F.3d 1124, 1128 (4th Cir. 1996) (citing § 9701(c)(7) for the proposition that signatory operators are considered to be"in business" if they conduct business and derive revenues from any business activity, regardless of whether that activity is in the coal industry); see also Florida Dep't of Banking & Finance v. Board of Governors of Fed. Reserve Sys., 800 F.2d 1534, 1536 (11th Cir. 1986) (definition of term in definitional section of statute controls construction wherever that term appears throughout the statute). Thus, in determining Patsy's liability under § 9711(a) of the Coal Act, the district court should have considered whether Patsy conducted any business activity after February 1, 1993 or derived any revenue from any business activity after February 1, 1993.

Because the district court applied the wrong definition of "in business," it failed to conduct the proper analysis for determining whether Patsy "remained in business" after February 1, 1993 for purposes of

8

§ 9711(a) of the Coal Act. The definition used by the district court required it to make materially different inquiries than the statutory definition. Patsy may be financially able to pay its eligible retirees health benefits under the Coal Act, but may not have conducted any business activity after February 1, 1993 nor derived any revenue from any business activity after February 1, 1993. In such a case, Patsy would escape liability to provide health benefits under § 9711(a) of the Coal Act. Because the district court may well have reached a different ultimate result had it applied the correct definition, the error was not harmless. See Fed. R. Civ. P. 61. Accordingly, we vacate the district court's judgment in favor of the 1992 Benefit Plan and remand this case for further proceedings consistent with this opinion.[3]

<u>VACATED AND REMANDED FOR FURTHER PROCEEDINGS</u>

_____

**3** Due to some confusion in the district court's numerous orders in this case, Cox could not discern whether the district court also found him personally liable to provide health benefits to eligible retirees under § 9711(a) of the Coal Act. Accordingly, Cox made himself a party to this appeal out of an abundance of caution. While we see no legal basis to hold Cox personally liable to provide health benefits to eligible retirees under § 9711(a) of the Coal Act, we trust that the district court will clear up the confusion on remand. Furthermore, in light of our disposition, we do not address Patsy's alternative argument that its liability under the Coal Act is limited to $352,903, the amount of Cox's remaining debt to Patsy as of January 1992.

9